

Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama 35487
O (205) 348-4928
F (205) 348-3909
(800) 826-1675
adap@adap.ua.edu
http://adap.ua.edu

*VIA E-MAIL AND CERTIFIED MAIL*

April 29, 2024

Alabama Medicaid Agency
Long Term Care Division
P.O. Box 5624
Montgomery, Alabama 36103-5624

Re:   Grievance On Behalf of James Michael DeLano

To Whom It May Concern:

Please accept this letter as a grievance on behalf of James Michael DeLano, a recipient of Alabama's Elderly and Disabled (E&D) Waiver.

**Introduction**

On March 1, 2024, James DeLano received an email from Lakiesha Williams advising him that the Medical Case Management (MCM) services he receives through Alabama Select Network (ASN)/AlaHealth as part of his E&D Waiver services would be terminated effective immediately. In part, the letter informing Mr. DeLano of the service termination contended that the MCM service is "a duplication of the services provided/offered by UAB STEP Clinic, the care and assistance expected of the Private Duty Nurse, and the assistance expected of the Personal Choices Workers[.]" Mr. DeLano's mother and representative, Victoria DeLano, requested on March 1, March 5, and March 15, 2024 that Mr. DeLano be afforded appropriate notice of the termination and advice of his appeal rights.

Ms. DeLano's requests were ignored. The family's attorney, Shandra Hartly, then made the same request on Mr. DeLano's behalf directly to ASN's counsel, Angie Cameron Smith, on March 18, 2024. Ms. Cameron answered Ms. Hartly's first request on March 20, 2024, stating that she was "looking into whether appeal rights are triggered by the discontinuation of medical case management based on duplication of services." Ms. Cameron also advised that she would treat Ms. DeLano's appeal request as a "reconsideration" of the termination of the MCM service. Ms. Hartly requested a response again on March 26, 2024. Ms. Cameron contended in an email later that day that the Alabama Medicaid Agency had "confirmed" that the termination of the MCM service was "not an appealable decision."

The Protection and Advocacy System for the State of Alabama

On March 28, 2024, Ms. Hartly again requested that Mr. DeLano be provided with formal written notice of the service termination and advisement of his appeal rights. Ms. Hartly noted to Ms. Cameron that Alabama Medicaid's opinion regarding the appealability of the termination of the MCM service did not change the requirements of federal law, and that the service termination triggered James' due process rights as contemplated by the Medicaid Act and its implementing regulations. Ms. Hartly again requested a follow-up on April 1, 2024. On April 2, 2024, Ms. Cameron sent (through a secure portal that the DeLanos were not able to access) an exact copy of the letter that Ms. Williams sent on March 1, 2024, with the addition of a single sentence advising Mr. DeLano that he could file a grievance with Alabama Medicaid if he had "concerns" about the termination of the MCM service.

On April 4, 2024, Ms. Hartly made a final request that Mr. DeLano be provided with an appropriate termination notice and advice of his appeal rights. Ms. Cameron refused, contending that "[t]he filing of a grievance is part of the administrative remedy process available to James." No further information about the "administrative remedy process" that the state has apparently opted to force upon Mr. DeLano in this matter was provided.

**ASN and Alabama Medicaid's Failure to Provide Required Due Process Protections**

Reflecting the long-standing proposition that "the fundamental requisite of due process is the opportunity to be heard," *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)), the Medicaid Act and its implementing regulations mandate that, when the state terminates, reduces, or suspends a Medicaid beneficiary's services, that beneficiary is entitled to notice and a hearing to challenge that adverse action. *See* 42 C.F.R. § 431.220; *see also* 42 C.F.R. § 431.201 (defining "action" in part as "a termination . . . of . . . covered benefits or services . . ."). Due process also requires that the opportunity to be heard is one which must be granted "in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).

The Medicaid Act's implementing regulations impose extensive obligations upon state Medicaid agencies to secure the due process rights of applicants and beneficiaries when adverse determinations are made with regard to their eligibility or services. As a threshold matter, state hearing systems must meet *at least* the constitutional due process standards prescribed by *Goldberg*. *See* 42 C.F.R. § 431.205(d). Among other requirements, *Goldberg* mandates that Medicaid recipients have "timely and adequate notice detailing the reasons for a proposed termination [of services], and an effective opportunity to defend [against the termination] by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Goldberg*, 397 U.S. at 267-68. Importantly, *Goldberg* also requires a pre-termination hearing. *Id*. at 263-64.

Additionally, the agency must inform applicants and beneficiaries *in writing* of, among other things, their rights to a fair hearing and the method by which they may obtain a hearing at any time that 42 C.F.R. § 431.220(a) would require a hearing. *See* 42 C.F.R. § 431.206(c)(2). State agencies must also send notice of the action at least 10 days before the action is to take effect; maintain services throughout the appeal process as long as the 10-day notice is sent and the beneficiary requests a hearing before the date of the action; and must reinstate services if the hearing request is received within 10 days after the date or action *or* where the agency took action without

providing the required advance notice. *See* 42 C.F.R. § 431.211; 42 C.F.R. § 431.230(a); 42 C.F.R. § 431.231(a); 42 C.F.R. § 431.231(c)(1).

ASN—a state-funded provider of Medicaid services that are, in turn, funded by Federal Financial Participation (FFP) and subject to all associated requirements—failed to comply with the due process requirements of the Medicaid Act, its implementing regulations, and *Goldberg*. They did not provide Mr. DeLano with timely notice of the termination of his MCM service; he was instead informed the service was being terminated effective immediately in a letter sent via email on a Friday evening outside of business hours (5:46 PM). They did not provide him with an opportunity to either maintain or have his services reinstated throughout the pendency of any "appeals process." They did not provide him with an opportunity to defend against the termination, either on a pre- or post-termination basis.

Advising Mr. DeLano over a month after the initial service termination that he may avail himself of some opaque "administrative remedy process" that apparently begins with the filing of a grievance—not with a specific person or office, but with Alabama Medicaid's LTC Division generally—does not fulfill the requirements of the Medicaid Act, its implementing regulations, or the constitutional due process protections required by *Goldberg*. In sum, ASN and Alabama Medicaid have consistently refused to provide Mr. DeLano, a Medicaid recipient, with the due process protections to which he is entitled as a matter of federal law. This is impermissible and illegal.

**Erroneous "Duplication of Services" Determination**

ASN's proffered reason for terminating Mr. DeLano's MCM service was that it is duplicative of "services provided/offered by UAB STEP Clinic, the care and assistance expected of the Private Duty Nurse, and the assistance expected of the Personal Choices Workers[.]" The DeLanos maintain that this is an inaccurate representation of the tasks that are expected to fall within the ambit of the MCM service, and of the responsibilities of the STEP Clinic, the Private Duty Nurse, and the Personal Choices workers. However, the DeLanos believe that the substantive reason for the termination is more appropriately challenged within the hearing system to which Mr. DeLano must have access as a matter of federal law; as such, this grievance letter will not address the actual termination of the MCM service any further.

**Conclusion**

It is worth noting that at no point so far have the DeLanos requested that the MCM service be reinstated. The DeLanos' only ask has been that Mr. DeLano be provided with the due process protections guaranteed to him by federal law, such that he has a meaningful opportunity to challenge the termination of services. By this letter, we request that Mr. DeLano receive a legally sufficient notice of the termination of his Medical Case Management services and advisement of his right to a fair hearing, and that his MCM services be reinstated throughout the pendency of the appeals process, as required by federal law.

Please confirm receipt of this communication at your earliest convenience. I can be reached via phone at (205) 348-4436, or by email at smhartly@adap.ua.edu.

Very truly yours,

*Shandra M. Hartly*

Shandra Monterastelli Hartly
Senior Staff Attorney

cc:    File
J. Carlton Sims, Staff Attorney, ADAP (via email)
DeLano family (via email)
Bo Offord, Alabama Medicaid Agency General Counsel (via email and Certified Mail)
Angie Cameron Smith, Counsel for ASN (via email and Certified Mail)